**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**MUKESH R. SHAH, M.D.,**

      **Plaintiff,**

                                   **Case No. 2:16-cv-1124**
                                   **Judge James L. Graham**
    **v.**                            **Magistrate Judge Elizabeth P. Deavers**

**METROPOLITAN LIFE INSURANCE
COMPANY,** *et al.*,

      **Defendants.**

<u>**OPINION AND ORDER**</u>

      This matter is before the Court on Plaintiff's Motion to Compel Discovery Responses

("Motion to Compel") (ECF No. 49), Defendant The Paul Revere Life Insurance Company's

("Paul Revere") Brief in Opposition to Motion of Plaintiff to Compel Discovery Responses (ECF

No. 51), and Plaintiff's Reply in Support of Motion to Compel (ECF No. 52).  For the reasons

that follow, Plaintiff's Motion to Compel is **GRANTED IN PART and DENIED IN PART**.

**I.**

**A.**    **Factual Allegations**

      In 1991, New England Mutual Life Insurance Company ("New England Mutual") issued

an individual policy of disability income insurance to Plaintiff ("the Policy").  (Amended

Complaint, ¶ 5, ECF No. 13 ("Am. Compl.").)  Defendant, Metropolitan Life Insurance

Company ("Met Life"), assumed the obligations under the terms of the Policy.  (*Id*. at ¶ 6.)[1]

---

[1] Paul Revere had an agreement with New England Mutual and then with Met Life, under which Paul Revere agreed to provide certain services on individual disability income policies issued by New England Mutual, including the administration of claims.  (*Id*. at ¶ 7.)

Under the Policy, Defendants are obligated to pay to Plaintiff, an interventional cardiologist, benefits for loss due to "injury" or "sickness" until Plaintiff reaches the age of 65 ("the Policy"). (Amended Complaint, ¶¶ 5, 6, 9–10, ECF No. 13 ("Am. Compl.").) Subject to certain terms and conditions, the rider under the Policy obligates Defendants to pay a maximum monthly amount due to "injury," but requires Defendants to pay Plaintiff only "a fraction" of that amount if Plaintiff's disability is due to "sickness." (*Id*. at ¶¶ 11, 21.)

On or around September 12, 2013, Plaintiff became disabled due to pain in his shoulders and cervical spine. (*Id*. at ¶¶ 16–17.) Thereafter, Plaintiff gave notice of his condition and claim under the Policy. (*Id*. at ¶¶ 18–19.) On June 5, 2014, Defendants notified Plaintiff that his claim for Total Disability Benefits was approved due to cervical spine neuropathy and shoulder pain. (*Id*. at ¶ 20.) On December 1, 2014, Defendants notified Plaintiff that they classified his condition as a "sickness" rather than an "injury," significantly decreasing the monthly benefits Plaintiff was to receive. (*Id.* at ¶¶ 21–23.) After Plaintiff requested a review of that decision by an Appeals Specialist, Defendants notified Plaintiff on May 6, 2015, that the decision that his condition was due to a sickness was correct. (*Id*. at ¶ 24.)

## B.    Procedural Background

On November 28, 2016, Plaintiff filed the instant action, alleging that Defendants wrongfully determined that Plaintiff's disability was due to sickness in order to avoid paying Plaintiff the maximum monthly amount and asserting claims for breach of contract, declaratory judgment, and bad faith. (ECF No. 13.) On January 25, 2017, the Court issued a scheduling order pursuant to the provisions of Federal Rule of Civil Procedure 16(b) and ordered, *inter alia*, that all discovery be completed by June 2, 2017, and that dispositive motions be filed by June 30, 2017. (ECF No. 10.) Plaintiff filed the Amended Complaint on March 10, 2017. (ECF No. 13.)

The Court later denied Defendants' requests to bifurcate the merits of Plaintiff's claims for trial, but by agreement of the parties, a separate trial phase for punitive damages will be held should the jury find that punitive damages are appropriate. (ECF No. 34 at 4.) The Court also denied Defendants' request to bifurcate discovery. (ECF No. 41.) The deadlines for completing discovery and for filing dispositive motions were ultimately extended to February 15, 2018, and March 15, 2018, respectively. (ECF No. 48.)[2]

On December 27, 2016, Plaintiff served his First Set of Combined Requests for Admissions, Interrogatories, and Requests for Production of Documents. (ECF No. 49-1.) Defendants served responses and objections to the first set of discovery on February 7, 2017. (ECF Nos. 49-2, 49-3, 49-4.) On April 7, 2017, Plaintiff sent a letter to defense counsel, advising that Defendants' discovery responses and/or objections were deficient. (ECF No. 49-5.) On May 25, 2017, Plaintiff again advised via letter that Defendants' discovery responses were not sufficient. (ECF No. 49-6.) On June 5, 2017, Defendants responded to the letters of April 7, 2017, and May 25, 2017, contending that its discovery responses were sufficient and advising that they "would be more than happy to discuss any of these issues if need be." (ECF No. 51-1 at PAGEID # 451.)

Defendants responded to Plaintiff's Second Set of Requests for Production of Documents on June 12, 2017. (ECF No. 49-7.) Defendants later responded to Plaintiff's Third Set of Requests for Production of Documents on October 10, 2017. (ECF No. 49-8.) On November 15, 2017, Defendants responded to two letters sent by Plaintiff regarding the sufficiency of Defendants' discovery responses and objections. (ECF No. 51-2.)

---

[2] While Defendants timely filed a Motion for Partial Summary Judgment (ECF No. 61), Plaintiff's response has been held in abeyance pending resolution of the Motion to Compel and Plaintiff's Motion *in Limine* (ECF No. 61). (ECF No. 64.)

On January 24, 2018, Plaintiff filed his Motion to Compel, seeking an order compelling responses or supplemental responses to thirteen different discovery requests and representing that he has exhausted all extrajudicial efforts. (ECF No. 49.) Defendants have opposed the Motion to Compel (ECF No. 51), and with the filing of Plaintiff's Reply (ECF No. 52), this matter is ripe for resolution.

## II.

### A. Exhaustion

Federal Rule of Civil Procedure 37 authorizes a party to file a motion for an order compelling discovery if another party fails to respond to discovery requests if the party moving for an order compelling disclosure or discovery "include[s] a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a); *see also* S.D. Ohio Civ. R. 37.1 ("[M]otions . . . relating to discovery shall not be filed in this Court . . . unless counsel have first exhausted among themselves all extrajudicial means for resolving the differences.").

Here, Plaintiff attaches a certification, averring that counsel has exhausted all extrajudicial efforts to resolve the discovery disputes. (Affidavit of J. Stephen Teetor, ECF No. 49-9.) Defendants, however, deny that Plaintiff has exhausted all extrajudicial efforts, contending that Plaintiff "conveniently omits" Defendants' letters of May 25, 2017, and November 15, 2017, in his recitation of the parties' discovery communication. (ECF No. 51 at 3–4 (citing ECF Nos. 51-1, 51-2)). Defendants contend that Plaintiff never responded to their letters and that the Motion to Compel "blindsided" them. (*Id*. at 4.) Defendants therefore take the position that the Motion to Compel should be denied because Plaintiff did not comply with

Local Rule 37.1 and the Court's prior Order (ECF No. 42 (advising that the parties must comply with Federal Rule of Civil Procedure 37 and Local Rule 37.1 before filing a discovery-related motion)). (ECF No. 51 at 7–8.) Plaintiff insists in reply that he did not intentionally omit Defendants' letters in his recitation in the Motion to Compel, arguing that Defendants' reliance on these letters elevates "form over substance" because "[i]n no way did Defendants respond any more meaningfully in their letters than they did in their discovery responses, Defendants again simply maintained their objections or pointed Plaintiff to thousands of documents in response to specific discovery requests." (ECF No. 52 at 1.)

Plaintiff's argument is not well taken. Plaintiff never responded to Defendants' letters of June 5, 2017, and November 15, 2017. Accordingly, the record reflects that Plaintiff could have done more to resolve, or narrow the scope, of the present discovery disputes. While Plaintiff now insists that these letters were not "meaningful[]" responses and the parties had reached impasse, he still does not explain why he did not file a motion to compel at those times instead of waiting months until shortly before the discovery deadline to file the Motion to Compel. Nevertheless, in light of the current posture of the litigation and under the circumstances of this particular case, the Court will address the merits of the Motion to Compel. The parties, however, are reminded that the Court and Civil Rules no longer countenance drive-by efforts to resolve discovery disputes. The Court expects purposeful negotiation and meaningful cooperation among counsel in order "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

**B.      Scope of Discovery and Federal Rules of Civil Procedure 26, 33, and 34**

Determining the scope of discovery is within this Court's discretion. *Bush v. Dictaphone Corp.*, 161 F.3d 363, 367 (6th Cir. 1998). As the United States Court of Appeals for the Sixth

Circuit has recognized, "[t]he scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad." *Lewis v. ACB Bus. Serv., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998). Federal Rule of Civil Procedure 26(b) identifies the acceptable scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1); *see also* Fed. R. Civ. P. 33(a)(2) ("An interrogatory may relate to any matter that may be inquired into under Rule 26(b)."), 34(a) ("A party may serve on any other party a request within the scope of Rule 26(b)[.]"). In considering the scope of discovery, the Court may balance Plaintiff's "right to discovery with the need to prevent 'fishing expeditions.'" *Conti v. Am. Axle & Mfg., Inc.*, 326 F. App'x 900, 907 (6th Cir. 2009) (quoting *Bush*, 161 F.3d at 367).

"[T]he movant bears the initial burden of showing that the information is sought is relevant." *Prado v. Thomas*, No. 3:16-cv-306, 2017 WL 5151377, at *1 (S.D. Ohio Oct. 19, 2017) (citing *Gruenbaum v. Werner*, 270 F.R.D. 298, 302 (S.D. Ohio 2010)). If the movant makes this showing, "then the burden shifts to the non-movant to show that to produce the information would be unduly burdensome." *Id*. (citing *O'Malley v. NaphCare, Inc*., 311 F.R.D. 461, 463 (S.D. Ohio 2015)); *see also* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment (stating that a party claiming undue burden or expense "ordinarily has far better information—perhaps the only information—with respect to that part of the determination" and that a "party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them").

# III.

The Court now considers in turn each category of requested information identified in the

Motion to Compel.

**A.**    **"Similar claims files containing decisions on 'sickness' versus 'injury'" (ECF No. 49 at 5 (citing First Set of Requests for Production No. 6; Second Set of Requests for Production Nos. 3, 4; Third Set of Requests for Production No. 7))**

According to Plaintiff, "[t]he core dispute essentially turns on Plaintiff's First Requests

for Production of Documents No. 6[.]" (ECF No. 49 at 3.) This request and Defendants'

response provide as follow:

> **[FIRST SET OF] REQUEST [FOR PRODUCTION NO.] 6:**
> Produce the complete claims files of the insureds that you have determined to have suffered an "injury" rather than a "sickness," or a "sickness" rather than an "injury" for the last ten years.
>
> **RESPONSE:**
> In addition to the General Objections and Responses, Defendant objects to this Request on the following grounds: (1) it is overly broad and unduly burdensome, particularly with regard to time and scope; (2) "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R Civ. P. 26(b)(2)(C)(iii); (3) it seeks documents which are neither relevant to the claims or defenses of the parties to this litigation; (4) it seeks documents which constitute or contain confidential, proprietary documents and/or trade secrets; (5) seeks documents protected by the attorney-client and/or attorney work-product privileges; seeks documents protected by third parties' right of privacy; and (6) under the authority of S*tate Farm v. Campbell*, 123 S. Ct. 1513 (2003), improperly seeks information regarding alleged conduct that bears no relation or nexus to the harm allegedly suffered and/or improperly seeks documents pertaining to alleged out-of-state conduct.

(ECF No. 49-2 at 7.)

The other interrogatories, requests for production of documents, and Defendants'

responses also related to this category are as follow:

> **[SECOND SET OF] REQUEST [FOR PRODUCTION NO.] 3:** Produce all of Dr. Jerry Beavers' claims opinions regarding injury and sickness determinations provided for Defendants from January 2013 onward, with the claimants' names redacted.

**RESPONSE:**

Defendant objects to this request on the ground that it seeks documents that are not relevant to any party's claims or defenses in this case, nor proportional to the needs of the case. This action relates to the manner in which plaintiff's disability claim was handled. The reports or opinions of Dr. Jerry Beavers that relate to other insureds or other claims are not relevant to the issues in this case. Defendant further objects that the request is overbroad in scope, and that searching for the requested documents would be time-consuming, unduly burdensome and oppressive. Defendant also objects that pursuant to *State Farm v. Campbell*, 123 S. Ct. 1513 (2003), the requested discovery is improper because it seeks information pertaining to "out-of-state" conduct that bears no relation or nexus to the harm allegedly suffered by plaintiff.

In addition, Defendant objects on grounds that the request seeks documents that contain personal, private information regarding other insureds, who have a right to privacy. Finally, Defendant objects on the ground and to the extent that the request seeks documents that constitute or contain confidential and/or proprietary business information. Defendant is withholding responsive documents based on the objections stated above.

(ECF No. 49-7 at 4.)

**[SECOND SET OF] REQUEST [FOR PRODUCTION NO.] 4:** Produce all injury and sickness claims determinations made by Pamela Fox provided for Defendants from January 2013 onward, with the claimants' names redacted.

**RESPONSE:**

Defendant objects to this request on the ground that it seeks documents that are not relevant to any party's claims or defenses in this case, nor proportional to the needs of the case. This action relates to the manner in which Plaintiff's disability claim was handled. The claims decisions rendered by Pamela Fox that relate to other insureds or other claims are not relevant to the issues in this case. Defendant further objects that the request is overbroad in scope, and that searching for the requested documents would be time-consuming, unduly burdensome and oppressive. Defendant also objects that pursuant to *State Farm v. Campbell*, 123 S. Ct. 1513 (2003), the requested discovery is improper because it seeks information pertaining to "out-of-state" conduct that bears no relation or nexus to the harm allegedly suffered by plaintiff.

In addition, Defendant objects that the request seeks documents that contain personal, private information regarding other insureds, who have a right to privacy. Finally, Defendant objects on the ground and to the extent that the request seeks documents that constitute or contain confidential and/or proprietary business information.

(*Id*. at 4–5.)

> **[THIRD SET OF] REQUEST [FOR PRODUCTION NO.] 7:** Produce documents, including claims files, for all cases from 2013 to the present where the insured claimed his or her disability was due to injury and the Defendants claims [sic] the disability was due to sickness.

> **RESPONSE:**
> Defendants object to this request on the following grounds: (1) it is vague and ambiguous, particularly with regard to the phrase "documents, including claim files;" (2) it is overbroad and unduly burdensome, particularly in regard to (i) time and scope, (ii) it is out of proportion to the needs of the case, (iii) to the extent it seeks documents that would not pertain to the Plaintiff s claim, and iv) to the extent the request encompasses definitions and demands documents without taking into account the manner in which Defendants' documents are kept, which would require Defendants to search extensive files to determine what document, if any, exist that may fall within the scope of the request; (3) it seeks documents which are not relevant to the claims or defenses of any party to this litigation; (4) it seeks confidential and/or proprietary business records; and (5) it seeks information and/or documents containing information that pertains to other insureds, which are protected by third party rights of privacy.

(ECF No. 49-8 at 6.)

Plaintiff devotes a majority of the Motion to Compel detailing his disputed discovery requests and exchanges with Defendants rather than explaining why each category of information is relevant to his claims. (*See generally* ECF No. 49.) After identifying the disputed discovery requests and his attempts to obtain the information, Plaintiff asserts that, through all of his requests, he "is trying to determine the practice and motivation for the insurance company to conclude he suffers from a 'sickness' instead of 'injury' and to learn about similar claims files handled by the same insurance company decision-makers that might show a pattern of finding 'sickness' instead of 'injury.'" (*Id*. at 5.)

Defendants argue that Plaintiff has not met his burden of showing that "similar" claim files containing decisions on "sickness" versus "injury" are relevant to any of his claims. (*Id*. at 11.) Defendants also argue that these requests are overly broad, unduly burdensome, and not

proportionate to the needs in this case.  (*Id*. at 8–11.)  In reply, Plaintiff insists that the requested

information is relevant to his "claims and proportional to the needs of the case" because "[t]his

case turns on whether or not Plaintiff's disability was caused by injury or sickness, and that

involves significant benefits which have surely been analyzed and debated and decided in prior

claims."  (ECF No. 52 at 4.)  Plaintiff also rejects Defendants' burden and proportionality

arguments, contending that "Defendant has made absolutely no disclosure to Plaintiff or to this

Court as to any efforts whatsoever it has made to actually locate all or any part of this

information—rather, they simply say it takes time and effort to do so, more than they would

prefer."  (*Id*.)

Plaintiff's arguments are not well taken.  Even if the requested information is relevant to

his claims, the fact that this information "might show a pattern" helpful to Plaintiff's theory does

not persuade this Court that the burden is proportional to the needs of this case.  As set forth in

detail above, the discovery requests in this category seek the following information:  other

insureds' claims files where Defendants determined that the insureds suffered an "injury" rather

than a "sickness," or vice versa, for the last ten years (First Request for Production No. 6); all

claims opinions by Jerry Beavers regarding injury and sickness determinations from January

2013 to the present (Second Request for Production No. 3); all injury and sickness claims

determinations by Pamela Fox from January 2013 to the present (Second Request for Production

No. 4); and documents, including claims files, from 2013 to the present where the insured claims

his or her disability was due to injury and the "Defendants claims the disability was due to

sickness" (Third Request for Production No. 7).  Defendants specifically represent that

identifying and documents responsive to these requests would be burdensome, time-consuming,

and detract from regular business activities.  (ECF No. 51 at 8–11 (citing Declaration of Cyndie

Bowie, ECF No. 51-4, at ¶¶ 1–7; Affidavit of Stan Dowd, Jr., ECF No. 51-5, at ¶¶ 1–6).)[3] For

example, as Defendants make clear, Dr. Beavers completed 445 medical activities related to 184

different claims during the two-year period of March 1, 2013, through March 1, 2015, alone.

(Bowie Declaration, ¶¶ 2–3.)  These claims are a small snapshot of the time periods requested by

Plaintiff (the last ten years and January 2013 to the present):  Paul Revere administered 14,808

Individual Disability claims in just 2014.  (*Id*. at ¶ 5.)

Moreover, Defendants would have to search these claims manually to determine which

claims, if any, may be responsive to Plaintiff's requests:

> Neither Met Life nor Paul Revere maintains data indicating the substance of an
> in-house physician's medical opinion, or the medical issue upon which the
> physician is asked to opine. To determine the substance of Dr. Beaver's [sic]
> communication to the claims personnel who requested his advice on the 184
> claims referenced in Paragraph 3 above, a manual review of Dr. Beaver's [sic]
> input would need to be performed.

(*Id*. at ¶ 4.)  Defendants further explain that in order to identify similar claim files containing

decisions on sickness versus injury, they would have to search thousands of claim files one at a

time because the current system does not provide a way to electronically search across multiple

claim files for a word or topic:

> 3.      NaviLink, Unum Group's claims management software, is a proprietary
> system developed by Unum that helps organize, manage, and archive the data,
> documents and transactions associated with claims submitted to Unum's
> insurance company subsidiaries.  Each claim submission is assigned a NaviLink
> Claim Number, which is used to identify and collect all future information and
> documents connected to the claim.  The NaviLink online system presents the
> information about a single claim to the service staff in a cohesive set of screen
> views; the many documents associated with the claim are presented in a separate
> image viewer attached to NaviLink.  There is currently no way to systematically
> search across multiple claim files in NaviLink in order to identify claims which

---

[3] Ms. Bowie is a paralegal for Unum Group, Pall Revere's parent company.  (Declaration
of Cyndie Bowie, ECF No. 51-4, ¶ 1 ("Bowie Declaration").)  Mr. Dowd works for Unum Group
as an Information Technology Executive.  (Affidavit of Stan Dowd, Jr., ECF No. 51-5, ¶ 1
("Dowd Affidavit").)

contain a certain word or phrase. In order to even attempt to write a program that might enable the company to run such a search, we would need to write unique programs for each database to pull information. However, the output would still need to be manually reviewed for accuracy. Because I have not had to attempt such an exercise previously, I cannot estimate with any certainty the amount of resources, time and expense it would take to construct such a search. Such an attempt would detract resources from our regular business activities at great hardship to the company. Further, such an effort would only be useful for this case.

4.      The data records and documents that appear on the NaviLink online system as a cohesive view of the claim are actually stored in multiple files, databases, and repositories. These separate records and documents are not directly connected electronically and are in multiple electronic formats and storage media. In fact, there is technically no such thing as a "NaviLink Claim File;" what appears as a cohesive view of a claim on NaviLink is generated from multiple, disparate sources, using sophisticated software.

5.      In an effort to produce the "claim file" in this case, the Navi Link data and documents were printed as .tif image(s) via the "Print Claim Folder" option within NaviLink. The .tif images were then converted into .PDF files using Adobe Acrobat 9 Professional. The .PDF files were subsequently OCR'd using a product called ABBYY Recognition Server (Version 3.5) ("ABBYY") to make the files fully searchable. After the claim file was run through the ABBYY process, the file was bate stamped for production.

6.      The OCR'ing process is the only known way to produce a NaviLink file in searchable format.

(Dowd Affidavit, ¶¶ 3–6.)

In short, the uncontroverted Bowie Declaration and Dowd Affidavit establish that locating and producing the information spanning multiple years would be unduly burdensome, imposing a hardship on regular business activities and is disproportionate to the needs of this case. Based on this record and considering the relevant factors under Rule 26(b)(1), the Court is not persuaded that the relevance of the requested information—which Plaintiff asserts "*might show a pattern of finding 'sickness' instead of 'injury[]'*" (ECF No. 49 at 5 (emphasis added))—outweighs the burden and expense of producing it or is proportional to the needs of this individual case. Fed. R. Civ. P. 26(b)(1); *Conti*, 326 F. App'x at 907. Accordingly, as it relates

to "[s]imilar claims files containing decisions on 'sickness' versus 'injury'" (First Set of Requests for Production No. 6; Second Set of Requests for Production Nos. 3, 4; Third Set of Requests for Production No. 7), the Motion to Compel is **DENIED**.

**B.**     **"Documents showing how the insurance company has determined whether its insureds have suffered a 'sickness' versus an 'injury'" (ECF No. 49 at 5 (citing First Set of Interrogatory Nos. 3, 5; First Set of Request for Production Nos. 2, 3; First Set of Requests for Admission No. 6))**

The interrogatories, requests for production of documents, requests for admission, and Defendants' responses related to this category are as follow:

**[FIRST SET OF] INTERROGATORY [NO.] 3**:   Identify documents and witnesses that support your contention in Paragraph 10 of your Answer that Plaintiffs disability was due to a "sickness" under the Policy.

**ANSWER**:

Paul Revere objects to this Interrogatory on the following grounds: (1) the request, including all discrete subparts, exceeds the number of written interrogatories that a party may serve under Federal Rule of Civil Procedure 33(a)(l ); (2) to the extent the request, as formulated, does not seek factual information but only legal conclusions; and (3) to the extent the request seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiving the foregoing objections, Paul Revere refers Plaintiff to the non-privileged portions of the claim file; the applicable policy; Defendant's Initial Disclosures; documents produced with Defendant's Response to Plaintiff's First Request for Production of Documents; and the claims manual in effect at the time Plaintiffs policy was administered. Paul Revere reserves the right to supplement this response as discovery and investigation continue.

(ECF No. 49-3 at 3.)

**[FIRST SET OF] INTERROGATORY [NO.] 5:** State the "necessary predicates or requirements" and identify documents and witnesses that support your contention in Paragraph 41 of your Answer that the Plaintiff has failed to satisfy the necessary predicates or requirements for benefits under the Policy and, therefore, judgment should be entered in favor of Defendant.

**ANSWER:**
Paul Revere objects to this Interrogatory on the following grounds: (1) the request, including all discrete subparts, exceeds the number of written interrogatories that a party may serve under Federa1 Rule of Civil Procedure 33(a)(l); (2) to the extent the request, as formulated, does not seek factual information but only legal conclusions; and (3) to the extent the request seeks information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiving the foregoing objections, Paul Revere refers Plaintiff to the non-privileged portions of the claim file; the applicable policy; Defendant's Initial Disclosures; documents produced with Defendant's Response to Plaintiffs First Request for Production of Documents; and the claims manual in effect at the time Plaintiffs policy was administered. Paul Revere reserves the right to supplement this response as discovery and investigation continue.

(*Id*. at 4.)

**[FIRST] REQUEST [FOR PRODUCTION OF DOCUMENTS NO.] 2:**
Produce all documents, charts and  spreadsheets (regardless of medium) that in any way, address the methods and means of determining whether your insureds, including but not limited to Plaintiff, have suffered a "sickness" versus an "injury."

**RESPONSE**:

Defendant objects to this request on the grounds that: (1) it is vague and ambiguous and could be interpreted to seek claim files of other insureds; (2) it is overly broad and unduly burdensome, particularly with regard to time and scope; (3) it seeks documents which are neither relevant to the subject matter of this litigation; 3) to the extent it seeks documents protected by attorney-client and/or attorney work product privileges; (4) it seeks documents containing or constituting confidential proprietary information and/or trade secrets; and (5) it seeks information outside Defendant's custody or control.

Subject to and without waiving the objections, Defendant will produce a copy of the claims manual in effect and available to claims personnel at the time the claim form was received as well as all changes made to the manual from that date until the decision was made to close the claim.  Defendant further refers Plaintiff to the claim file and subject policy for complete, chronological information related to the decision made regarding Plaintiff's claim for benefits.

(ECF No. 49-2 at 4.)

**[FIRST] REQUEST [FOR PRODUCTION OF DOCUMENTS NO.] 3:**
Produce all communications (whether internal within your organization or external communication), whether in paper or electronic form, that, in any way, address the methods and means of determining whether your insureds have suffered a "sickness" versus an "injury," including but not limited to the claim of Plaintiff.

**RESPONSE**:
Defendant incorporates the General Objections set forth above and further objects to this request on the following grounds: (1) it is overly broad, vague, and ambiguous particularly regard to the terms "all communications", "external communication", and "methods and means of determining"; (2) it is over broad in time and scope and it is out of proportion with the needs of the case; (3) to the extent that it seeks information and documents protected by the attorney- client privilege and/or attorney work product doctrine; (4) it is vague and ambiguous and could be interpreted to seek claim files of other insureds; (5) it seeks documents which are neither relevant to the subject matter of this litigation; (6) it seeks documents containing or constituting confidential proprietary information and/or trade secrets; and (7) it seeks information outside Defendant's custody or control.

Subject to and without waiving the foregoing objections, Defendant produces the policy; and the non-privileged portions of the claim file which is a detailed, written chronological account of the handling of Plaintiff's claim, which encompasses actions taken or decisions made regarding the claim, including, but not limited to, the claim decision letter located at bates stamp TNE/MET-CL-IDI-NL9273410-004360 through TNE/MET-CL-IDI-NL9273410-004365.

Additionally, Defendants have conducted a diligent search and made reasonable inquiry concerning the personal notes and drafts of claims personnel involved with Plaintiff's claim. The search did not identify any other documents. A diligent search and reasonable inquiry was made concerning archived e-mails using various search terms, including Mukesh R. Shah, 9273410, 191D218095, and Plaintiff s social security number. Defendant refers Plaintiff to the e-mail file produced herewith as a result of this search.

Defendant reserves the right to supplement this response as discovery and investigation continue.

(*Id*. at 5.)

**[FIRST SET OF] REQUEST [FOR ADMISSION NO.] 6:** Admit that Plaintiff is disabled because of injury, not disease. If your response to the preceding Request for Admission was anything other than an unqualified admission, state the basis for your denial or qualification.

**RESPONSE:**
Paul Revere objects to this Interrogatory because the request, as formulated, does not seek factual information but only legal conclusions. Subject to and without waiving the foregoing objection, Paul Revere denies this Request. Paul Revere refers Plaintiff to the non-privileged portions of Plaintiff's claim file, including, but not limited to, the policy and the claim decision letters which speak for themselves.

(ECF No. 49-4 at 4.)

Although Plaintiff does not specifically explain why these particular requests are relevant, the Court assumes that Plaintiff's relevance argument identified above (ECF No. 49 at 5) also applies to this category of information. However, in light of the uncontroverted Bowie Declaration and Dowd Affidavit and for the reasons previously discussed, the Court finds that proportionality favors Defendants in this instance.

Moreover, to the extent that the requests in this category may seek information related to only Plaintiff, Plaintiff has not explained why each of the responses is deficient. While Plaintiff attaches copies of correspondence that reflect the parties' disagreement regarding the various discovery requests, the Court declines to undertake the burden of sifting through the exhibits or to speculate why Plaintiff characterizes each response as deficient. *Kendle v. Whig Enter., LLC*, No. 15-cv-1295, 2016 WL 898569, at *5 (S.D. Ohio Mar. 9, 2016) ("Because the Court declines to speculate as to why plaintiff characterizes the opposing defendants' supplemental interrogatory answer as deficient, the Motion to Compel is **DENIED** as it relates to the opposing defendants' answer to Interrogatory No. 2." (emphasis in original); *Meads v. Georgia Pacific Corp.*, No. 08-cv-507, 2010 WL 11530342, at *2 (E.D. Ky. Mar. 23, 2010) (denying motion to compel where, *inter alia*, the court is "left to speculate as to why plaintiff believes the discovery responses are insufficient"); *cf. Emerson v. Novartis Pharm. Corp.*, 446 F. App'x 733, 736, 2011

WL 3701835, at *4 (6th Cir. 2011) ("'[J]udges are not like pigs, hunting for truffles' that might be buried in the record.") (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)).

Finally, in this category, Plaintiff also challenges the sufficiency of Defendants' answer to First Set of Request for Admission ("RFA") No. 6. (ECF No. 49 at 2–3, 5.) The Court notes that the proper procedural mechanism by which Plaintiff should challenge Defendants' response to RFA No. 6 falls under Rule 36(a)(6) instead of motion to compel under Rule 37. *Snyder v. Fleetwood RV, Inc*., No. 2:13-cv-1019, 2016 WL 339972, at *7 (S.D. Ohio Jan. 28, 2016). In its discretion, however, the Court will construe Plaintiff's Motion to Compel as it relates to this discovery request as having been filed pursuant to Rule 36(a)(6). *Id.* Even doing so, the Court is not persuaded that Defendants' objection and response were improper. Plaintiff has not specified why Defendants' answer to RFA No. 6 is deficient, and the Court declines the invitation to fabricate an argument to that effect. For all of these reasons, as it relates to "[d]ocuments showing how the insurance company has determined whether its insureds have suffered a 'sickness' versus an 'injury'" (First Set of Interrogatory Nos. 3, 5; First Set of Request for Production Nos. 2, 3; First Set of Requests for Admission No. 6), the Motion to Compel is **DENIED**.

C.      **"Bonus plans for the decision makers showing an interest in the outcome of a decision adverse to plaintiff" (ECF No. 49 at 5 (citing Second Set of Requests for Production No. 2))**

The document request and Defendants' response related to this category of discovery are as follow:

> **[SECOND SET OF] REQUEST [FOR PRODUCTION NO.] 2:**      Produce documents regarding the compensation plan including, but not limited to, bonuses and/or rewards, for all employees of Defendants that worked on any part of Plaintiff's disability claim under the policy from 2013 onward.

**RESPONSE:**
Defendant objects to this request on the following grounds: (1) it seeks documents that are not relevant to the claims or defenses of any party to this action, nor is the request proportional to the needs of the case, especially considering the importance of this discovery in resolving the issue in the case, and considering that the burden and expense of the proposed discovery outweighs its likely benefit; (2) it is overly broad and unduly burdensome in time and scope and to the extent such documents would contain material unrelated to Plaintiffs claim; (4) to the extent it seeks documents that contain confidential and/ or proprietary information; and (5) it seeks documents containing private information pertaining to third parties who have a right to privacy.

Subject to and without waiving the foregoing objections, Unum Life will produce copies of the following documents:

• 2015 Annual Incentive Plan

• 2015 Proxy Statement for Unum Group

(ECF No. 49-7 at 4.)

Plaintiff contends that this question, among others, goes "to the heart of the bad faith claim[.]" (ECF No. 49 at 1.) Defendants stand by their objections and insist that they have fully responded to Plaintiff's request by producing the 2015 Annual Incentive Plan. (ECF No. 51 at 5.) Defendants further argue that this information is irrelevant to Plaintiff's claims. (*Id*. at 11–12.) In reply, Plaintiff argues that Defendants' response is deficient because it points to, *inter alia*, the "2015 Annual Incentive Plan," which Plaintiff complains "is a general company plan that Plaintiff would have no way of knowing which employee qualified for what bonus based on unknown criteria." (ECF No. 52 at 4–5.)

The Court agrees with Plaintiff that this information is relevant to his claims as bonus / rewards could affect determinations of Plaintiff's claim. *See Raab v. Unum Grp*., No. 2:10–cv–186, 2011 WL 12614882, at *2 (S.D. Ohio June 6, 2011) (finding, *inter alia*, that salary and bonus are relevant because they "are factors that could affect claims determinations") (internal quotation marks omitted). Based on the present record, however, it is not clear whether or not

additional documents beyond what Defendants have already produced exist or why it would be burdensome to produce if additional responsive documents exist. Accordingly, as it relates to "[b]onus plans for the decision makers showing an interest in the outcome of a decision adverse to plaintiff" (Second Set of Requests for Production No. 2), the Motion to Compel is **GRANTED.** Defendants are **ORDERED** to produce documents responsive to this request (other than the documents previously produced, if they exist) within **FOURTEEN (14) DAYS** from the date of this Opinion and Order, subject to an appropriate protective order. If no additional responsive documents exist, Defendants are **ORDERED** to confirm such in writing within **FOURTEEN (14) DAYS.**

D.    **"Other 'confirming letters' from Dr. Beavers designed to paper the claims file in favor of the insurance company" (ECF No. 49 at 6 (citing Third Set of Requests for Production No. 8))**

The document request and Defendants' response related to this category of discovery are as follow:

> **[THIRD SET OF] REQUEST [FOR PRODUCTION NO.] 8:**    Produce all documents since January 1, 2013, including from claims files, in which Dr. Beavers sent "confirming letters" to medical providers to claimants such as the one bates stamped: TNE/MET-CL-IDI-NL9273410-004244 through TNE/MET-CL-IDINL9273410-004245.

> **RESPONSE:**
> Defendants object to this request on the following grounds: (1) it is vague and ambiguous, particularly with regard to the phrases "documents, including claim files" and "confirming letters;" (2) it is overbroad and unduly burdensome, particularly in regard to (i) time and scope, (ii) it is out of proportion to the needs of the case, (iii) to the extent it seeks documents that would not pertain to the Plaintiff s claim, and iv) to the extent the request encompasses definitions and demands documents without taking into account the manner in which Defendants' documents are kept, which would require Defendants to search extensive files to determine what document, if any, exist that may fall within the scope of the request; (3) it seeks documents which are not relevant to the claims or defenses of any party to this litigation; (4) it seeks confidential and/or proprietary business records; and (5) it seeks information and/or documents containing information

that pertains to other insureds, which are protected by third party rights of privacy.

(ECF No. 49-8 at 6–7.)

Plaintiff does not explain in the Motion to Compel or Reply why this specific request is relevant. (*See generally* ECF Nos. 49, 52.) Accordingly, Plaintiff has not met his initial burden of showing that the information sought is relevant. *Prado v. Thomas*, No. 3:16-cv-306, 2017 WL 5151377, at *1 (S.D. Ohio Oct. 19, 2017).

Moreover, even if the Court assumes that Plaintiff's relevance argument that "similar claims files handled by the same insurance company decision-makers that might show a pattern of finding 'sickness' instead of 'injury[]'" (ECF No. 49 at 5) also may apply to this category of documents, the Court is not persuaded that any possible relevance is proportional to the burden of producing this information. As discussed above in connection with the first two categories of requested documents, Defendants represent that identifying and documents responsive to this request would be burdensome, time-consuming, and detract from regular business activities. (ECF No. 51 at 5.) For example, Dr. Beavers completed 445 medical activities related to 184 different claims during the period of March 1, 2013, through March 1, 2015, alone, which represent a small percentage of the thousands of Individual Disability claims administered in 2014 alone. (Bowie Declaration, ¶¶ 2–3, 5.) Defendants would have to search these claims manually to determine which claims, if any, may be responsive to Plaintiff's requests. (*Id*. at ¶ 4.) Defendants further explain that in order to identify other "confirming letters" from Dr. Beavers, they would have to search thousands of claim files one at a time because the current system does not provide a way to electronically search across multiple claim files for a word or topic. (Dowd Affidavit, ¶¶ 3–6.) Accordingly, as it relates to "[o]ther 'confirming letters' from Dr. Beavers designed to paper the claims file in favor of the insurance company" (Third Set of

Requests for Production No. 8), the Motion to Compel is **DENIED**.  Fed. R. Civ. P. 26(b)(1);

*Conti*, 326 F. App'x at 907.

E.    **"Other claims files in which the insurance company rejected the opinion on disability of the treating physician and instead relied on in-house, paid, and bonused staff" (ECF No. 49 at 6 (citing Third Set of Requests for Production of Documents No. 9))**

The document request and Defendants' response related to this category of discovery are

as follow:

> **[THIRD SET OF] REQUEST [FOR PRODUCTION NO.] 9:**    Produce all documents, including claims files from January 2013 to the present, in which Defendants rejected an insured's treating physician's opinion and relied instead on Defendants' in-house staff.
>
> **RESPONSE:**
> Defendants object to this request on the following grounds: (1) it is vague and ambiguous, particularly with regard to the phrase "documents, including claim files," "rejected" and "relied on;" (2) it is overbroad and unduly burdensome, particularly in regard to (i) time and scope, (ii) it is out of proportion to the needs of the case, (iii) to the extent it seeks documents that would not pertain to the Plaintiff s claim, and iv) to the extent the request encompasses definitions and demands documents without taking into account the manner in which Defendants' documents are kept, which would require Defendants to search extensive files to determine what document, if any, exist that may fall within the scope of the request; (3) it seeks documents which are not relevant to the claims or defenses of any party to this litigation; (4) it seeks confidential and/or proprietary business records; and (5) it seeks information and/or documents containing information that pertains to other insureds, which are protected by third party rights of privacy.

(ECF No. 49-8 at 7.)

Again, Plaintiff does not explain why this specific request is relevant.  (*See generally*

ECF Nos. 49, 52.)  Accordingly, Plaintiff has not met his initial burden of showing that the

information sought is relevant.  *Prado*, 2017 WL 5151377, at *1.

Even if the Court assumed that Plaintiff advanced a relevance argument that this

information "might show a pattern of finding 'sickness' instead of 'injury[]'" (ECF No. 49 at 5),

the Court is not persuaded that any possible relevance outweighs the burden of producing this information for the reasons discussed earlier in this Opinion and Order.  (Bowie Declaration, ¶¶ 2–7; Dowd Affidavit, ¶¶ 2–6.)  Moreover, as Defendants point out, determining whether Defendants "rejected the opinion" of a treating physician instead of "relying on" Defendants' own physicians require judgment calls by the reviewer (ECF No. 51 at 4), increasing the burden of production.  For all of these reasons, as it relates to "[o]ther claims files in which the insurance company rejected the opinion on disability of the treating physician and instead relied on in-house, paid, and bonused staff" (Third Set of Requests for Production of Documents No. 9), the Motion to Compel is **DENIED**.

**F.**   **"Documents and witnesses that support the insurance companies' [sic] contention in Paragraph 42 of its Answer that it complied with and performed all of the promises, obligations, and duties under Dr. Shah's insurance Policy" (ECF No. 49 at 6 (citing First Set of Interrogatories No. 6))**

The interrogatory and Defendants' answer related to this category of discovery are as follow:

> **[FIRST SET OF] INTERROGATORY [NO.] 6:** Identify documents and witnesses that support your contention in Paragraph 42 of your Answer that Defendant complied with and performed all of the promises, obligations, and duties under the Policy.

> **ANSWER:**
> Paul Revere objects to this Interrogatory on the following grounds: (1) the request, including all discrete subparts, exceeds the number of written interrogatories that a party may serve under Federal Rule of Civil Procedure 33(a)(l); (2) to the extent the request, as formulated, does not seek factual information but only legal conclusions; and (3) to the extent the request seeks information protected by the attorney-client privilege and/or the work product doctrine.

> Subject to and without waiving the foregoing objections, Paul Revere refers Plaintiff to the non-privileged portions of the claim file; the applicable policy; Defendant's Initial Disclosures; documents produced with Defendants Response to Plaintiff's First Request for Production of Documents; and the claims manual

in effect at the time Plaintiffs policy was administered. Paul Revere reserves the right to supplement this response as discovery and investigation continue.

(ECF No. 49-3 at 4–5.)

Plaintiff has not explained why Defendants' answer is deficient. The Court declines to speculate as to why Plaintiff believes this answer is not sufficient. Accordingly, as it relates to "[d]ocuments and witnesses that support the insurance companies' [sic] contention in Paragraph 42 of its Answer that it complied with and performed all of the promises, obligations, and duties under Dr. Shah's insurance Policy" (First Set of Interrogatories No. 6), the Motion to Compel is **DENIED**. *See Kendle*, 2016 WL 898569, at *5; *Meads,* 2010 WL 11530342, at *2.

## IV.

For the reasons discussed above, Plaintiff's Motion to Compel Discovery Responses (ECF No. 49) is **GRANTED IN PART and DENIED IN PART**, consistent with the foregoing.

**IT IS SO ORDERED.**

Date: May 22, 2018                                      */s/ Elizabeth A. Preston Deavers*
                                                                ELIZABETH A. PRESTON DEAVERS
                                                                UNITED STATES MAGISTRATE JUDGE